IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. FARRAH HOROWITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 12 C 2561 |
| v. | ) | |
| | ) | |
| ANIMAL EMERGENCY AND | ) | |
| TREATMENT CENTERS OF CHICAGO, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On April 6, 2012, Plaintiff Dr. Farrah Horowitz, a veterinarian, brought the present four-count Complaint against her former employers Defendants Animal Emergency and Treatment Centers of Chicago, LLC and Animal Emergency Treatment Center of Grayslake, LLC (collectively "AETC"), along with individual Defendants Dr. Matt Tompkins, Dr. Kristi Sandman, and Dr. Anthony Coronado based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Defendants' motion.

**LEGAL STANDARD**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair

notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

## BACKGROUND

After completing her surgical residency at Virginia/Maryland Regional College of Veterinary Medicine, Dr. Horowitz signed an Employment Agreement (the "Agreement") with AETC on September 21, 2009, that was for a term of 18 months – ending on February 28, 2011 – with an annual salary of $155,000. (R. 1, Compl. ¶ 10, Ex. A.) Section 9.A. of the Agreement states that if either party wanted to renew the Agreement, they would have to inform the other party in writing "no later than ninety (90) days prior" to the expiration of the Agreement, which was November 30, 2010. (*Id*. ¶ 11.) Dr. Horowitz alleges that because neither party so informed the other by November 30, 2010, her employment with AETC was scheduled to end on February 28, 2011. (*Id*.) On December 13, 2010, Dr. Horowitz emailed Defendant Dr. Coronado to ask about renewing her contract. (*Id*. ¶ 12.) Dr. Horowitz maintains that Dr.

2

Coronado ignored her emails and so she wrote to Bob Renault, who was the Chief Operating Officer of AETC, to ask with whom she should speak concerning this matter. (*Id.* ¶ 13.) Renault then reported that Dr. Coronado would follow-up with her. (*Id.*)

Drs. Coronado and Horowitz met on or around December 28, 2010, at which time Dr. Coronado told Dr. Horowitz that AETC would not pay her the same amount after her contract expired. (*Id.* ¶ 14.) Instead, Dr. Coronado explained that if Dr. Horowitz wanted to renew her contract, she would have to take a cut in salary from $155,000 to $115,000. (*Id.*) In response, Dr. Horowitz told Dr. Coronado that she was not open to a pay cut and that she would leave AETC when her contract expired. (*Id.* ¶ 15.) On January 6, 2011, Dr. Coronado gave Dr. Horowitz a written offer sheet and, under the terms of that offer, AETC would either pay Dr. Horowitz a fixed amount of $125,000 annually or pay her a percentage of the revenue her work generated for AETC. (*Id.* ¶ 16.) Dr. Horowitz further alleges that Dr. Coronado and she met on or around January 13, 2011 to discuss the January 6, 2011 offer, at which time Dr. Coronado made it clear that AETC would not offer a guaranteed salary of more than $125,000. (*Id.* ¶ 18.) In addition, Dr. Horowitz alleges that Dr. Coronado refused to give her information about the second option of the January 6, 2011 offer based on production, but he did tell Dr. Horowitz that there was no chance that this option would enable her to make more than $125,000 a year. (*Id.*) At that time, Dr. Horowitz told Dr. Coronado that she would not stay at AETC at the reduced salary and that she intended to leave AETC when her contract expired. (*Id.*)

Dr. Horowitz further alleges that over the next several weeks, Dr. Coronado repeatedly tried to asked Dr. Horowitz for information about her job search and made it clear that she could stay at AETC beyond the Agreement's expiration date of February 28, 2011 if she wanted. (*Id.* ¶

19.) Dr. Horowitz agreed that staying on would be possible if she did not secure new employment by the time the contract expired, but she also alleges that at no time was there any agreement that she would continue to work at AETC at a reduced salary. (*Id.*) In February 2011, Dr. Coronado raised the possibility of Dr. Horowitz signing a 6-month contract. (*Id.* ¶ 20.) On February 23, 2011, Dr. Coronado sent Dr. Horowitz a 6-month contract that included the same compensation package that Dr. Horowitz had already rejected. (*Id.*) When they met to discuss the contract offer, Dr. Coronado offered to insert a clause giving Dr. Horowitz an out from the contract if she found a new job. (*Id.*) Dr. Horowitz asserts that she informed Dr. Coronado that there would be no need for a contract under that scenario. (*Id.*) According to Dr. Horowitz, this exchange effectively ended the discussion of a new contract. (*Id.*)

After February 23, 2011, Dr. Coronado told Dr. Horowitz that AETC did not want her to feel like she had to leave AETC as soon as her contract expired and that they wanted her to stay. (*Id.* ¶ 21.) Dr. Horowitz replied that she was happy to remain there until she found a new job. (*Id.*) In addition, Dr. Horowitz alleges that at no point did she ever agree to work at AETC at a reduced salary nor did Dr. Coronado or anyone else at AETC tell her that the offer for her to remain beyond February 28, 2011 was contingent on her accepting a salary lower than what she had received for the previous year and a half. (*Id.* ¶ 22.)

On or around March 3, 2011, Dr. Horowitz accepted a position with WestVet Surgical Center of Chicago ("WestVet") and asserts that she gave Dr. Coronado notice that she intended to leave AETC in the beginning of April 2011. (*Id.* ¶ 23.) Dr. Horowitz alleges that on or around March 14, 2011, she gave Dr. Coronado formal notice that April 3, 2011 would be her last day at AETC. (*Id.* ¶ 27.) At that time, Dr. Coronado informed Dr. Horowitz that she was

4

subject to a non-compete agreement. (*Id*.) Shortly thereafter, Dr. Horowitz emailed Dr. Coronado to explain that – according to the Agreement – her new position did not violate any restrictive covenant limiting the geographical area where should could practice because AETC refused to renew her contract on terms that are "the same or better" than the original contract. (*Id*. ¶ 29.) In addition, Dr. Horowitz alleges that on or around March 16, 2011, Dr. Coronado assured her that AETC would not seek to enforce the restrictive covenant as long as Dr. Horowitz did not solicit nurses or clients from AETC. (*Id*. ¶ 30.) On April 4, 2011, Dr. Horowitz signed a contract to begin working at WestVet, which is in the Chicago area. (*Id*. ¶ 31.)

Dr. Horowitz further alleges that four days after she began working at WestVet, AETC, through its counsel, contacted WestVet by letter and knowingly made the false claim that Dr. Horowitz was in violation of the restrictive covenants in her contract with AETC. (*Id*. ¶ 33.) In particular, Dr. Horowitz alleges that AETC accused her of violating the provision of her contract that forbade her from working within 20 miles of either the Chicago or Grayslake, Illinois AETC office. (*Id*. ¶ 34.) Second, Dr. Horowitz alleges that AETC also accused her of violating the non-solicitation provision of the Agreement. (*Id*. ¶ 35.) Upon receiving the letter on or around April 13, 2011, Dr. Jeff Brourman, the owner of WestVet, showed the letter to Dr. Horowitz and expressed his concern. (*Id.* ¶ 39.) On or around April 16, 2011, Dr. Brourman told Dr. Horowitz that because of the letter, she would have to resign from WestVet, which she did. (*Id*.)

In her Complaint, Dr. Horowitz brings the following state law claims: (1) a common law defamation *per se* claim against AETC in Count I; (2) a common law tortious interference of contract claim against AETC in Count II; (3) a common law tortious interference with

5

prospective economic advantage against AETC in Count III; and (4) a violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*, in Count IV. In the present motion, Defendants seek to dismiss all four claims.

## ANALYSIS

**I.     Agency Allegations**

Before determining whether Dr. Horowitz has sufficiently alleged her tortious interference, defamation *per se*, and IWPCA claims, the Court turns to Defendants' argument that they cannot be held liable for the intentional torts of their attorney, Rita Garry. More specifically, Defendants argue that because Dr. Horowitz's intentional tort claims are based on Garry's demand letter that she sent to Dr. Horowitz's new employer at WestVet, the Court must dismiss Dr. Horowitz's Complaint because she failed to allege that the letter was drafted in the scope of an agency relationship or that Garry's assertions were ratified or approved by AETC before she sent the letter.

In support of their argument, Defendants rely on an Illinois Appellate Court's decision concerning a plaintiff's failure to properly allege respondeat superior claims pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-603. *See Webb by Harris v. Jewel Co., Inc.,* 137 Ill.App.3d 1004, 1007-08, 92 Ill.Dec. 598, 485 N.E.2d 409 (1st Dist. 1985). It is well-established, however, that in diversity cases, federal law governs procedure, not state law. *See Gacek v. American Airlines, Inc.,* 614 F.3d 298, 301-02 (7th Cir. 2010) ("Under the *Erie* doctrine, federal courts in diversity cases (and any other cases in which state law supplies the rule of decision) apply state 'substantive' law but federal 'procedural' law."). As such, the Illinois Appellate Court's decision in *Webb* does not lend any guidance as to whether Dr.

Horowitz has properly alleged her intentional torts claims under the federal notice pleading standards.

Moreover, under Illinois substantive law concerning the attorney-client relationship, "clients are generally bound by their attorneys' acts or omissions during the course of the legal representation that fall within the apparent scope of their attorneys' authority." *Horwitz v. Holabird & Root*, 212 Ill.2d 1, 9, 287 Ill.Dec. 510, 816 N.E.2d 272 (Ill. 2004); *see also Wade v. Soo Line R.R. Corp.,* 500 F.3d 559, 564 (7th Cir. 2007) ("Attorneys' actions are imputed to their clients, even when those actions cause substantial harm. A litigant bears the risk of errors made by his chosen agent."). Pursuant to federal pleading standards – under which the Court must accept all well-pleaded facts as true and draw all permissible inferences in Dr. Horowitz's favor – she has sufficiently alleged that Defendants' attorney was acting within the scope of the attorney's authority in representing AETC as shown by the April 8, 2011 demand letter attached to Dr. Horowitz's Complaint. *See Reger Dev., LLC v. National City Bank,* 592 F.3d 759, 764 (7th Cir. 2010) (federal courts "consider documents attached to the complaint as part of the complaint itself"). More specifically, Garry explains in the first sentence of the letter that she represents AETC and that the letter serves as notice to WestVet and Dr. Horowitz of Dr. Horowitz's continuing obligations under the September 2009 Employment Agreement with AETC. (R. 3, Compl., Ex B, 4/8/11 Garry letter.) Accordingly, Defendants' first argument is without merit.

**II.     Absolute Litigation Privilege**

Next, Defendants maintain that the absolute litigation privilege bars Dr. Horowitz's defamation claim against them. Illinois courts have adopted Sections 586 and 587 of the

Restatement (Second) of Torts, which protect attorneys and their clients from liability for "communications preliminary to a proposed judicial proceeding." *See Atkinson v. Affronti,* 369 Ill.App.3d 828, 832, 308 Ill.Dec. 186, 861 N.E.2d 251 (1st Dist. 2006); *Medow v. Flavin,* 336 Ill.App.3d 20, 31-32, 270 Ill.Dec. 174, 782 N.E.2d 733 (1st Dist. 2002) (citation omitted). "[T]he proposed proceeding must be 'contemplated in good faith and under serious consideration.'" *Medow,* 336 Ill.App.3d at 32 (citation omitted). "The interest at issue in privileging statements made in judicial proceedings is the public interest in granting all individuals the 'utmost freedom of access' to courts for resolution of their disputes." *Kurtz v. Hubbard*, No. 1-11-1360, 2012 WL 2308140, at *3, ___ N.E.2d ___ (1st Dist. May 17, 2012) (citing *Malevitis v. Friedman,* 323 Ill.App.3d 1129, 1132, 257 Ill.Dec. 209, 753 N.E.2d 404 (2001)).

  Viewing Dr. Horowitz's well-pleaded allegations and permissible inferences as true, her allegations that AETC knowingly made false statements about the alleged breach of her employment agreement establish that the threatened litigation in AETC's demand letter was not "contemplated in good faith." *See Medow*, 336 Ill.App.3d at 32. In addition, because plaintiffs are not required to plead facts that anticipate and defeat affirmative defenses, the Court denies Defendants' motion to dismiss based on the absolute litigation privilege. *See Richards v. Mitcheff,* ___ F.3d ___, 2012 WL 3217627, at *2 (7th Cir. Aug. 9, 2012) ("Judges should respect the norm that complaints need not anticipate or meet potential affirmative defenses."). Defendants' argument is best left for a summary judgment motion under Rule 56(a). *See id.*

**III.    Defamation Claim – Count I**

In Count I of her Complaint, Dr. Horowitz alleges a defamation *per se* claim under Illinois common law.  Under Illinois law, "[d]efamation is the publication of a false statement that 'tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person.'"  *Lott v. Levitt,* 556 F.3d 564, 568 (7th Cir. 2009) (citation omitted).  There are two types of defamation under Illinois law – defamation *per se* and defamation *per quod*.  *See Giant Screen Sports v. Canadian Imperial Bank of Commerce,* 553 F.3d 527, 532 (7th Cir. 2009).  "Statements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning."  *Kolegas v. Heftel Broad., Corp.*, 154 Ill.2d 1, 10, 180 Ill.Dec. 307, 607 N.E.2d 201 (Ill. 1992); *see also Madison v. Frazier,* 539 F.3d 646, 653 (7th Cir. 2008).  "When a defamation claim is one for defamation *per quod*, [] a plaintiff must show special damages, i.e., actual damages of a pecuniary nature, to succeed."  *Hukic v. Aurora Loan Serv.,* 588 F.3d 420, 438 (7th Cir. 2009).  "Some statements, however, are so obviously harmful that injury to the plaintiff's reputation can be presumed and are considered actionable *per se.*"  *See Lott,* 556 F.3d at 568.  Illinois recognizes five categories of statements that are actionable *per se*, including "(1) those imputing an inability to perform or want of integrity in the discharge of one's duties of office or employment; and (2) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business."  *Giant Screen Sports,* 553 F.3d at 532.

In her Complaint, Dr. Horowitz alleges that four days after she began working at her new employer WestVet, AETC, through its counsel, contacted WestVet by letter and knowingly

9

made the false claim that Dr. Horowitz was in violation of the restrictive covenants in her contract with AETC. Dr. Horowitz maintains that in the letter, AETC accused her of violating the provision of her contract that forbade her from working within 20 miles of either the Chicago or Grayslake AETC office. She also contends that AETC accused her of violating the non-solicitation provision of the Agreement. As a result of these allegedly false statements, Dr. Jeff Brourman, the owner of WestVet, asked Dr. Horowitz to resign. Viewing these well-pleaded facts as true, Dr. Horowitz has sufficiently alleged defamation *per se* because these statements impute that Dr. Horowitz cannot perform her job based on the restrictive covenants. In other words, her allegations that Defendants' false accusations concerning the breach of contract go to her lack of integrity in her profession.

Defendants nevertheless argue that because Dr. Horowitz's inability to perform her job and her lack of integrity were not based on her competence as a veterinarian – but on her breaching a contract – her defamation claim must fail. First, Defendants' argument asks the Court to view the facts and all permissible inferences in Defendants' favor, which is not appropriate under the federal notice pleading standards. *See Zemeckis v. Global Credit & Collection Corp.,* 679 F.3d 632, 634 (7th Cir. 2012). Second, the allegations support a claim that the letter's content disparaged Dr. Horowitz's professional integrity and character as they relate to her ability to carry out her job, and thus the allegations sufficiently state a defamation *per se* claim. *See Cody v. Harris,* 409 F.3d 853, 857-58 (7th Cir. 2005).

Next, Defendants argue that counsel's letter is not defamation *per se* under the innocent construction rule. "Although a statement may fit into one of these [*per se*] categories, this fact, standing alone, 'has no bearing on whether the alleged defamatory statement is actionable,

because certain factors may render defamatory statements non-actionable as a matter of law.'" *Giant Screen Sports,* 553 F.3d at 532 (citation omitted). One of these factors includes the innocent construction rule. *See Lott,* 556 F.3d at 568 ("a statement that is reasonably capable of an innocent construction is not *per se* defamatory"). "Whether a statement is reasonably capable of an innocent construction is a question of law for the court to decide." *Madison,* 539 F.3d at 654. Under Illinois' innocent construction rule, a "statement 'reasonably' capable of a nondefamatory interpretation, given its verbal or literary context, should be so interpreted. There is no balancing of reasonable constructions." *Green v. Rogers,* 234 Ill.2d 478, 500, 334 Ill.Dec. 624, 917 N.E.2d 450 (Ill. 2009) (citation omitted). The innocent construction rule "requires a court to consider the statement in context and give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Madison v. Frazier,* 539 F.3d 646, 653-54 (7th Cir. 2008) (quoting *Solaia Tech., LLC v. Speciality Publ'g Co.,* 221 Ill.2d 558, 304 Ill.Dec. 369, 852 N.E.2d 825, 839 (2006)). Courts "are to interpret the words of the statement as they appear to have been used and according to the idea they were intended to convey to a reader of reasonable intelligence." *Seith v. Chicago Sun-Times, Inc.,* 371 Ill.App.3d 124, 135, 308 Ill.Dec. 552, 861 N.E.2d 1117 (1st Dist. 2007).

Here, construing Dr. Horowitz's allegations and permissible inferences as true, Dr. Horowitz alleges that AETC's attorney sent her new employer a demand letter threatening litigation because Dr. Horowitz breached a restrictive covenant with AETC, which Dr. Horowitz alleges she did not breach. In particular, the letter stated that Dr. Horowitz engaged in prohibited conduct in breaching her employment agreement by accepting a position with WestVet and that she solicited AETC clients. Also, the demand letter unequivocally states that AETC would

11

enforce its rights and pursue all equitable and legal remedies against Dr. Horowitz and WestVet. (Compl, Ex. B, 4/8/11 Letter, at 1-2.) Meanwhile, Dr. Horowitz alleges that she did not breach her employment agreement, and therefore, AETC's statements in the letter are false.

On the other hand, Defendants argue that the April 8, 2011 demand letter can be innocently construed because it reflects their attorney's bias as to AETC's potential legal dispute. Thus, Defendants maintain, they cannot be liable because they did not draft the letter. Again, Defendants are asking the Court to construe the demand letter and all permissible inferences in their favor. Moreover, the Court has already rejected their attempt to evade liability by attributing the alleged defamation to their attorney, as discussed in detail above. *See also Independent Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012) ("a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defense"). The Court therefore denies Defendants' motion to dismiss Dr. Horowitz's defamation claim as alleged in Count I of the Complaint.

**IV.    Tortious Interference Claims – Counts II and III**

In Count II of her Complaint, Dr. Horowitz alleges a tortious interference with contract claim. To establish a tortious interference with contract claim under Illinois law, a plaintiff must show: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *Hess v. Kanoski & Assoc.,* 668 F.3d 446, 454 (7th Cir. 2012) (citation omitted). In Count III of her Complaint, Dr. Horowitz alleges a tortious interference with prospective economic advantage claim. Under Illinois law, "to prevail on a

12

claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 511-12, 154 Ill.Dec. 649, 568 N.E.2d 870 (Ill. 1991); *see also Botvinick v. Rush University Med. Ctr.,* 574 F.3d 414, 417 (7th Cir. 2009).

In their motion to dismiss, Defendants argue that because Dr. Horowitz has not properly alleged a defamation claim, her tortious interference claims necessarily fail. More specifically, they contend that both tortious interference claims "hinge on whether attorney Garry's letter is actionable as defamatory." (R. 24, Opening Brief, at 11.) As discussed above, Dr. Horowitz has alleged sufficient facts, accepted as true, that state a plausible defamation claim. *See Twombly*, 550 U.S. at 570. Meanwhile, Defendants do not argue that Dr. Horowitz has failed to sufficiently allege her tortious inference claims under *Twombly* and *Iqbal*. The Court therefore denies Defendants' motion to dismiss Counts II and III of the Complaint.

### V.     IWPCA Claim – Count IV

In Count IV of her Complaint, Dr. Horowitz alleges an IWPCA claim. In support of her IWPCA claim, Dr. Horowitz alleges that in early April 2011 she realized that her final two AETC paychecks were lower than they should have been and that one of her pay stubs included a notation mentioning a change in rate. (Compl. ¶ 42.) Dr. Horowitz further alleges that she then emailed Dena Hein, Business Office Support for AETC, to ask about the underpayment after which Ms. Hein reported that Dr. Coronado had told her that Dr. Horowitz's salary was

being reduced. (*Id*. ¶ 43.) Dr. Horowitz then emailed Dr. Coronado to point out that she never agreed to a change in salary and requested that he adjust the final paycheck accordingly. (*Id*.) In response, Dr. Coronado told Dr. Horowitz that he had "made clear" that Dr. Horowitz's salary was going to drop to $125,000 after March 1, 2011. (*Id*. ¶ 44.) Further, Dr. Horowitz alleges that if AETC had insisted that they would pay her at the reduced rate after the expiration of her written employment agreement, she would not have agreed to stay past the expiration date. (*Id*. ¶ 45.) In addition, she alleges that the parties had agreed to extend her employment arrangement – with a salary of $155,000 per year – past the expiration date of her written agreement. (*Id*.)

To prevail on her IWPCA claim, Dr. Horowitz's allegations must show that she had a valid contract or employment agreement at the time of the violation. *See Hess,* 668 F.3d at 452. Under the IWPCA, "an 'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract." *Zabinsky v. Gelber Group, Inc.,* 347 Ill.App.3d 243, 249, 283 Ill.Dec. 61, 807 N.E.2d 666 (1st Dist. 2004). Under the federal notice pleading standards, Dr. Horowitz has sufficiently alleged an agreement under the IWPCA by stating that after her written agreement expired, the parties agreed to extend her current employment arrangement providing for a salary of $155,000 a year. (Compl. ¶ 45.) The allegations that Dr. Coronado attempted to negotiate a lower salary do not defeat Dr. Horowitz's IWPCA claim at this procedural posture where the Court views Dr. Horowitz's well-pleaded facts and permissible inferences as true. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

Next, Defendants argue that the Court must dismiss Drs. Tompkins and Sandman as Defendants from Count IV because an IWPCA claim is only actionable against an "employer" – which is defined as a corporate officer and agent who is personally liable, namely, an agent who knowingly permitted the corporation to violate the Act. *See* 820 ILCS 115/13; *Andrews v. Kowa Printing Corp.,* 217 Ill.2d 101, 110, 298 Ill.Dec. 1, 838 N.E.2d 894 (Ill. 2005).

In her Complaint, Dr. Horowitz alleges that Drs. Tompkins and Sanders are members and agents of AETC. (Compl. ¶¶ 5, 6.) She further alleges that on April 2, 2012, through counsel, she sent a written demand to all named Defendants for her unpaid compensation, but that Defendants declined the demand. (*Id.* ¶ 49.) In addition, Dr. Horowitz alleges that "Defendants were employers of Dr. Horowitz within the meaning of the Illinois Wage Payment Collection Act in that, among many other things, she performed labor services for AETC, and Defendants controlled whether and how much Dr. Horowitz was paid." (*Id.* ¶ 72.) Furthermore, she alleges that she "sent a demand for payment of wages to Defendants on April 2, 2012, pursuant to Attorney Fees in Wage Actions Act, 705 ILCS 225/1, but Defendants failed to honor the demand." (*Id.* ¶ 74.) In short, Dr. Horowitz alleges that Drs. Tompkins and Sandman knew about her IWPCA claim, that they controlled her pay, and that they failed to honor her demands. Construing these allegations and reasonable inferences as true, Dr. Horowitz has sufficiently alleged that Drs. Tompkins and Sandman knowingly permitted AETC to violate the IWPCA by reducing her pay at the end of her tenure with AETC. *See Limestone Dev. Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory); *see, e.g., McGreal v. Semke,* 836 F.Supp.2d 735, 741 (N.D. Ill. 2011). Therefore, the Court denies Defendants' motion to

dismiss in this respect.

On a final note, the Court did not address Defendants' arguments made in footnotes or for the first time in their reply brief. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are waived"); *Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (cursory arguments made in footnotes are waived). "The underlying concern is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Hernandez v. Cook County Sheriff's Office,* 634 F.3d 906, 913 (7th Cir. 2011).

## CONCLUSION

For the these reasons, the Court denies Defendants' motion to dismiss.

**Date:** August 20, 2012

                                **ENTERED**

                                _____
                                **AMY J. ST. EVE**
                                **United States District Court Judge**